J-S44018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: B.G.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: K.G., FATHER | |
| | No. 586 EDA 2017 |

Appeal from the Decree February 6, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000585-2015, CP-51-DP-0002503-2013

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                **Filed August 4, 2017**

K.G. ("Father") appeals from the trial court's decree entered on February 6, 2017, which granted the petition filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate his parental rights to S.G. a/k/a B.G.H. ("Child"), born in December of 2013, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.  For the reasons that follow, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> On December 15, 2013, Child's family became known to [DHS] through a General Protective Services ("GPS") report alleging that Child's mother ("Mother") tested positive for marijuana during her first prenatal appointment and that Mother tested positive for marijuana at Child's birth[1].  The GPS Report also alleged that Mother had a history of depression and that Father and Mother were not prepared to provide care for Child. On December 17, 2013, DHS attempted to conduct a home visit;

however, Father was not present at his residence, a hotel room located at the Parker-Spruce Hotel. On December 18, 201[3], DHS met with Father at the hotel to conduct a home visit. DHS observed inadequate baby supplies for the infant Child. The family had just two blankets and a bassinette. The hotel room had no refrigerator or stove. Father and Mother had been living at the hotel for over one year. Thereafter, DHS learned that Father was found guilty of indecent sexual assault of a person less than 13 years of age on October 15, 2012 and for failure to comply with registration of sexual offender requirements under Meghan's [sic] Law. Father was ultimately incarcerated as a result of a conviction for not registering in compliance with Meghan's [sic] Law requirements.

[1] The parental rights of Mother were terminated at the same termination hearing on February 6, 2017. Mother has not filed an Appeal.

On December 19, 2013, DHS obtained an Order of Protective Custody ("OPC") for Child and placed Child in foster care. At the adjudicatory hearing on December 30, 2013, Mother and Father appeared before the Honorable Jonathan Irvine and the Child was adjudicated dependent. On August 2, 2015, the Community Umbrella Agency ("CUA") developed a Single Case Plan ("SCP"). The objective for Child was to return to parent or guardian. The objective for Father was to resolve his legal issues.

Trial Court Opinion, 4/28/17, at 2-3 (internal citations omitted) (footnote in original).

On August 21, 2015, DHS filed a petition to terminate Father's parental rights to Child. On February 6, 2017, the trial court held a hearing on the petition. At the conclusion of the hearing, the trial court involuntary

terminated Father's parental rights.[1]  Father filed a timely notice of appeal,

along with a concise statement of errors complained of on appeal pursuant

to Pa.R.A.P. 1925(a)(2)(i) and (b) on February 12, 2017.  The trial court

filed its opinion on April 4, 2017.

On appeal, Father raises the following issues for our review:

_____

[1] We are cognizant of the Pennsylvania Supreme Court's recent decision in ***In re Adoption of L.B.M.***, wherein the author of the lead opinion, Justice Wecht, stated that 23 Pa.C.S. § 2313(a) requires the trial court to appoint counsel for a child in a termination-of-parental-rights case, and the failure to do so is not harmless error.  In part II-B of the lead opinion, Justice Wecht concluded that a trial court is required to appoint counsel to represent a child's legal interests even when the child's guardian *ad litem* ("GAL"), who is appointed to represent the child's best interests, is an attorney.  Justice Wecht would hold that the interests are distinct and require separate representation.  However, four members of the Court disagreed with this strict application of Section 2313(a).  Rather, they opined, in various concurring and dissenting opinions, that separate representation would be required only if the child's best interests and legal interests conflicted.

We note that after publication, ***In re Adoption of L.B.M.***, 156 A.3d 1159 (Pa. 2017), was corrected and superseded on May 23, 2017, by ***In re Adoption of L.B.M.***, ___A.3d ___, 2017 WL 2257203 (Pa. 2017), which, *inter alia*, clarified that Part II-B of the opinion was not precedential and did not overrule ***In re K.M.***, 53 A.3d 781 (Pa. Super. 2012) in its entirety.  Relevant to our discussion, in ***K.M.*** this Court held, *inter alia*, that 23 Pa.C.S. § 2313(a) did not require appointment of a separate attorney when a GAL, who was an attorney, had been appointed and capably represented both the legal and best interests of the child.  The non-precedential Part II-B of ***Adoption of L.B.M.*** does not disturb this portion of ***K.M.***

In the present case, Father did not raise before the trial court any concerns that would have created a need for independent legal counsel for Child, nor did he make any claims that the GAL did not properly represent Child's legal and best interests.  In fact, we observe that the GAL, who is also an attorney, well represented Child on both fronts, and that Child's legal and best interests were not in conflict.

1.      Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, K.G., pursuant to 23 Pa.C.S. [§] 2511(a)(1) where [F]ather presented evidence that he substantially met his FSP goals and tried to perform his parental duties.

2.      Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, K.G., pursuant to 23 Pa.C.S. [§] 2511(a)(2) where [F]ather presented evidence that he has remedied his situation because he took parenting, drug treatment, sex offender and violence prevention programs. Father has the present capacity to care for his child.

3.      Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, K.G., pursuant to 23 Pa.C.S. [§] 2511(a)(5) where evidence was provided to establish that the child was removed from the care of the father and mother, and that [F]ather is now capable of caring for his child.

4.      Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, K.G., pursuant to 23 Pa.C.S. [§] 2511(a)(8) where evidence was presented to show that [F]ather is now capable of caring for his child since he has completed parenting and is receiving treatment for drug and alcohol, violence prevention and sex offender.  Additionally, [F]ather will have housing upon his release from prison which will be appropriate housing for his child.

5.      Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, K.G., pursuant to 23 Pa.C.S. [§] 2511(b) where evidence was presented that established that [F]ather had visited his child before he was incarcerated.  Father made every effort to keep in contact with his child but was denied visits.

Father's Brief at 7.[2]

---

[2] Father framed his issues somewhat differently in his concise statement, but we find them sufficiently preserved for our review.

Our standard of review for cases involving the termination of parental

rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re J.F.M.*, 71 A.3d 989, 992 (Pa. Super. 2013) (quoting *In re R.N.J.*,

985 A.2d 273, 276 (Pa. Super. 2009)). "The trial court is free to make all

credibility determinations, and may believe all, part, or none of the evidence

presented." *Id.* Importantly, "[i]f the findings of the trial court are

supported by competent evidence, we will affirm even if the record could

also support the opposite result." *Id.*

When deciding a case under 23 Pa.C.S. § 2511, the trial court must

engage in a bifurcated process. *In re B.C.*, 36 A.3d 601, 606 (Pa. Super.

2012). In that analysis:

> [t]he initial focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies at least one of the nine statutory grounds in section 2511(a). If the trial court determines that the parent's conduct warrants termination under section 2511(a), then it must engage in an analysis of the best interests of the child under section 2511(b), taking into primary consideration the developmental, physical, and emotional needs of the child.

*Id.*

Father's first four issues challenge the termination of his rights under Section 2511(a). We note that the trial court terminated Father's parental rights to Child pursuant to subsections (1), (2), (5) and (8) of Section 2511(a). Indeed, "[t]his Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a)." *In re J.F.M.*, 71 A.3d 992. Herein, we focus our analysis on section 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence that the following three conditions are met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003); 23 Pa.C.S. § 2511(a)(2). The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Father has been incarcerated repeatedly for most of Child's life. Our Supreme Court addressed the relevance of incarceration in termination decisions under subsection 2511(a)(2) as follows:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d 817, 829 (Pa. 2012). After revisiting its decision in *In re: R.I.S.*, 36 A.3d 567 (Pa. 2011), regarding incarcerated parents, our Supreme Court further stated:

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See e.g. Adoption of J.J.*, 515 A.2d [883,] 891 [(Pa. 1986)] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re:*] *E.A.P.*, 944 A.2d [79,] 85 [(Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 47 A.3d at 830-831.

Father contends that because he was expecting to be released from incarceration on February 27, 2017, and had made reasonable efforts to achieve sobriety, the trial court's conclusion that he was incapable of parenting Child lacked support. Father's Brief at 15. Father asserts that because he "will secure appropriate housing for his family upon his release from prison," and he is capable of caring for Child, the trial court erred by terminating his parental rights pursuant to subsection 2511(a)(2). *Id.* at 14.

The trial court found that Father's repeated incarcerations have impaired his ability to parent Child. Trial Court Opinion, 4/4/17, at 6. Furthermore, the court credited the testimony of CUA caseworker, Andrew Thayne ("Thayne"), stating:

> The CUA Representative testified that Father failed to meet his SCP objectives which were to maintain compliance with his legal issues, to continue to participate in sex offender classes, to meet the needs of the child, and to address drug and alcohol and mental health issues. Specifically, these legal issues concerned his incarceration as a registered sex offender and the follow up therapy he needed. The CUA Representative testified that although Father did send letters to Child, the Child was displaying behaviors indicating that she was "terrified" to visit the Father in prison.

*Id.* at 5-6 (internal citation omitted).

As we have stated many times, "[a] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the

responsibilities of parenting." **In re I.J.**, 972 A.2d 5, 9 (Pa. Super. 2009)

(quoting **In re Adoption of M.E.P.**, 825 A.2d 1266, 1276 (Pa. Super.

2003)).

> Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs. … This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen (18) months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care. … [A] parent desiring to retain parental rights must exert himself to take and maintain a place of importance in his child's life.

**In re E.A.P.**, 944 A.2d at 83 (internal citations omitted).

Our review of the record supports the trial court's decision. Child was

removed from Father's care by DHS based upon concerns regarding Father's

drug and alcohol use, stability, housing, and criminal activity. These

problems rendered him incapable of parenting Child at the time of her

removal. Moreover, Father failed to address his mental-health concerns

throughout the life of this case, refusing to complete the court-ordered

evaluation at the Clinical Evaluation Unit ("CEU") for a dual diagnosis

assessment. N.T., 2/6/17, at 13; DHS Exhibit 1. Further, although Father

made several efforts to achieve sobriety, he failed to appear for any random

drug screenings when he was out of prison. N.T., 2/6/17, at 13.

In the three years prior to the termination hearing, Father repeatedly

failed to comply with the sexual offender registration requirements under

Megan's Law for any appreciable amount of time, resulting in his nearly continuous incarceration throughout Child's entire lifetime. *Id.* at 14, 26. Father did not regularly visit or otherwise communicate with Child, having last seen her approximately two years prior to the termination hearing. *Id.* at 15. Father has been incapable of providing parental care, control or subsistence for Child's physical and mental well-being, and this incapacity persisted to the day of the termination hearing. We, therefore, find no error or abuse of discretion in the trial court's decision to terminate Father's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(2).

We now turn to Section 2511(b), which states:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b). Under Section 2511(b), we inquire whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of Child. *In re C.M.S.*, 884 A.2d 1284, 1286-1287 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* The mere finding

of a parent-child bond does not preclude termination of parental rights; rather, the trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). "[A] court may properly terminate parental bonds which exist **in form** but not **in substance** when preservation of the parental bond would consign a child to an indefinite, unhappy, and unstable future devoid of the irreducible minimum parental care to which that child is entitled." *In re J.W.*, 578 A.2d 952, 958 (Pa. Super. 1990) (emphases in original). Expert testimony is not required for the trial court to determine if there is a positive bond between a parent and his child. *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008).

Father asserts that because he sent cards and pictures to Child, there is necessarily a bond between them, and termination of Father's parental rights "does [not] serve the child's physical and emotional needs and welfare." Father's Brief at 17-18. In assessing the bond between Father and Child, the trial court found that Father's instability and inability to protect Child supported the conclusion that termination of Father's parental rights would be in the best interest of Child. Trial Court Opinion, 4/4/17, at 6.

The record supports the trial court's decision. Although Father has expressed his desire to raise Child upon his release from prison, Father has

not been able to meet the essential needs of Child. Notably, Father testified that he would be released from prison to a halfway house that prohibits children. N.T., 2/6/17, at 22. Accordingly, Father's release from prison would not result in Father and Child's reunification.

We likewise reject Father's argument that because he sent cards and pictures to Child, a parent-child bond necessarily existed between them. Father's gestures, standing alone, are insufficient to forge a meaningful relationship with Child. **See In re Z.P.**, 944 A.2d 108, 1125 (Pa. Super. 2010) (concluding that a child should not be placed in foster care indefinitely "just because an incarcerated parent … shows interest in his child[.]"). Indeed, the harsh reality is that Child does not even know who Father is, and this Court has repeatedly held that a parent's own feelings of love and affection for a child do not prevent termination of parental rights. **Id.** at 1121.

Additionally, Thayne testified that Child has lived with her foster parents since she was six days old and that a strong bond exists between Child and her foster parents. N.T., 2/6/17, at 15. Notably, Child refers to her foster mother as "mom" and her foster father as "Baba." **Id.** at 17. Thayne testified that Child's foster parents provide her with a home, meet her needs, maintain much-needed stability, and provide a parent-child relationship. **Id.** at 18.

Based on the record before us, we find no error or abuse of discretion in the trial court's conclusion regarding Section 2511(b) that Child's developmental, emotional, and physical needs and welfare are best met by terminating Father's parental rights. We, therefore, affirm the trial court's decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2017